## HENRY CODMAN & Wife vs. ISAAC F. COFFIN.

J. A., by his will, after sundry devises and bequests, devised: (1) to his wife one half of the net income of all the residue of his estate, during her life; (2) to his daughter, C. W. C., the other half of the net income of such residue, during her life; (3) in case H. C., husband of C. W. C., should survive his wife, the income of one half of the testator's estate to him, during his life; (4) the other half of the income of his estate not devised to H. C., after the decease of the testator's wife, together with the reversion of his whole estate, to his daughter, C. W. C., in fee simple, " thereby meaning," in the words of the will, " to vest in her the absolute fee in all my estate, subject," &c.: The will also contained the following clause: "And inasmuch as my daughter is incapable of making a will during her coverture, without express authority from me, as the devisor, it is my express will and intention, that she may, by any instrument in writing, purporting to be her last will, devise the whole of her estate so devised by me, in such way and manner as to her may seem expedient:" The testator's wife died in his lifetime: It was held, that, as to the moiety of the estate devised to the wife of the testator, for her life, the daughter, C. W. C., took an estate therein in fee, which vested in her in possession immediately upon the death of the testator; and that, as to the other moiety, C. W. C. took an estate for life, remainder to her husband, H. C., for life, remainder to herself in fee.

THE parties in this case, on the 28th of February, 1848, entered into a written agreement, the plaintiffs to sell and convey, in the right of the wife, to the defendant, and the defendant to receive a deed and pay for, a certain piece of land lying in Dorchester, particularly described in the agreement, and therein stated to be part of the estate devised by John Amory to Catharine Willard Codman, the female plaintiff, by his last will and testament.

The defendant having declined to perform the agreement, on his part, on the ground, that the plaintiffs had no such title to the land in question, under the will of John Amory, as would enable them to make a good title therein to him, the plaintiffs brought their bill in equity against the defendant, for a specific performance of the agreement. The agreement referred to, and the will of John Amory, being annexed to and made part of the bill, the defendant demurred.

It was alleged in the bill, that Catharine Amory, wife of John Amory, died in his lifetime, and that he died in the year eighteen hundred and thirty-two.

31 *

The will of John Amory, which was dated the 12th of September, 1829, contained the following clauses : —

" *First.* I give and bequeath to my beloved wife, Catharine Amory, all my horses, carriages, plate, and furniture, of every sort, except my library, as her sole and absolute property forever.

" *Secondly.* I give my library to my son, Henry Codman, as his sole and absolute property.

" *Thirdly.* I give to my said wife my estate at Roxbury, as now occupied by me, and all the farming stock and utensils, to hold to her and her heirs forever.

" *Fourthly.* I give to my wife the use and improvement of my mansion-house in Common Street, in which I now live, for and during her life.

" *Fifthly.* I give and devise to my said wife one half of the income of all the residue of my estate, during her life, by which I mean the net income.

" *Sixthly.* I give and devise to my daughter, Catharine Willard Codman, the other half part of the net income of the residue of my estate, during her life.

" *Seventhly.* In case my son, Henry Codman, shall survive his wife, I give to him the income of one half of my estate, during his life.

" *Eighthly.* The other half of the income of my estate not devised to the said Henry Codman, after the decease of my said wife, together with the reversion of my whole estate, after the expiration of the life annuities, I give and devise to my daughter, Catharine Willard Codman, in fee simple, thereby meaning to vest in her the absolute fee in all my estate, subject to the payment of the income as above provided. And inasmuch as my daughter is incapable of making a will during her coverture, without express authority from me, as the devisor, it is my express will and intention that she may, by any instrument in writing purporting to be her last will, devise the whole of her estates so devised by me in such way and manner as to her may seem expedient, except as to the specific devise hereinafter made to John

Amory Codman, my grandson ; and, on failure of my said daughter to make such testamentary appointment, all the estates herein devised shall go and descend to her heirs at law, the devise to her mother and husband of income alone excepted.

" *Ninthly.* From and after the decease of my wife, son, and daughter, I give and devise to John Amory Codman in fee simple my estate in Cornhill, numbered ten, and the tenements connected with the same in Devonshire Street ; but if said John Amory Codman shall die unmarried, and without issue, in the lifetime of his father and mother, then this devise shall be void, and the said estate shall go to and descend to the heirs at law of the said Catharine Willard Codman, or to such persons to whom she shall devise the same."

The case was argued in writing, by *B. R. Curtis,* for the plaintiffs, and *J. Codman,* for the defendant.

SHAW, C. J. This is a bill in equity, to enforce the specific execution of a contract, by which the defendant undertook to purchase and pay for a tract of land, upon receiving a good and valid deed thereof. The bill avers, that the defendant declines performing his contract, because he alleges, that the plaintiffs have not such a title to the land, as will enable them to make a good title to him. They charge that they have a good title, and set it forth in the bill, to which the defendant demurs. The question, therefore, is, whether the title set forth in the bill, by the devise under the will of John Amory, the father of the female plaintiff, creates such a title in the plaintiffs, that a joint deed from them will make a good title to their grantee. The will is annexed and made part of the bill.

It appears, by the facts stated, and admitted by the demurrer, that the wife of the testator died between the time of the making of the will and the decease of the testator, so that the devise to her never took effect. The estate in Boston specifically devised to the grandson is not now in question ; the estate to be affected in this case is a portion of the estate in

Dorchester, and the title depends upon that part of the will which relates to the general estate.

Upon the construction of this will, the court are of opinion, that, as to the one moiety devised to the testator's wife for her life, but which by her decease before the testator did not take effect, the daughter took an estate in fee, which vested in her in possession immediately upon the death of the testator. In regard to the other moiety, the opinion of the court is, that she took an estate for life, remainder to her husband, Henry Codman, for life, remainder to herself in fee.

The testator does not seem to have used words with technical accuracy. The main object now is to ascertain his intention, from the words he has used, and in the sense in which he understood and used them. He has in some instances given the " net income," and in others the " income " of real estate. But as the gift is direct and without any trust, we understand that the devise of the " income " of an estate, like the term " improvement," is a devise of the estate ; and that " net income " is the actual income yielded, subject to taxes and incidental expenses. So, we think, he uses the term " annuities " as equivalent to these precedent estates, and the annual income yielded by them. He also uses the term "reversion " where " remainder " would be more strictly accurate. With these explanations premised, we think that the ultimate remainders, subject to these several life estates, were estates in fee simple in the daughter. The words are clear, strong, and expressive, to pass a fee. They are : " The other half of the income of my estate not devised to the said Henry Codman, after the decease of my said wife, together with the reversion of my whole estate, after the expiration of the life annuities, 1 give and devise to my daughter, Catharine Willard Codman, in fee simple, thereby meaning to vest in her the absolute fee in all my estate subject to the payment of the income as above provided." It must require very clear, strong, and decisive terms, to reduce a devise so clearly given in fee to a life estate.

The argument opposed to this construction is, that the testator gives his daughter a power to devise the estate, in such way and manner as she might think expedient    One argument is, that as a fee embraces all disposing power over an estate, if he intended to give her a fee, he need not have inserted this express power.    But this affords but a slight implication.    It ofte i occurs, that superfluous provisions are introduced into a will, for the greater certainty.    Another ground of argument is, that the testator intended, that if the daughter did not devise the estate, it should go to her heirs as purchasers.    One way to test this may be thus stated ; suppose she had been or should become a feme sole ; according to the argument, she could not convey in fee, in her lifetime, because, by the construction of the will, she had only a life estate ;  but she must resort to the power, and devise the estate, otherwise it would go over by force of the will to her heirs as purchasers, by way of remainder; so that in no event could she dispose of it in her lifetime.    But this could not have been the reason actuating the testator, — and we are now endeavoring to ascertain his intention, — because he has given a different reason, to wit, that the devisee was under the disability of coverture, so that, in his view, the power to devise was necessary, not because she had not an inheritable estate in fee, and a consequent full disposing power, so far as the quality of her estate was concerned, but because he supposed she could not exercise that power, by reason of hei coverture, and that he could remove this disability by his will. No argument, we think, therefore, can be drawn from this power, tending to prove that the testator intended to reduce her estate to an estate for life.    If the testator believed, that without this power, she could not devise, but that under it she might, then the fair inference is, that he intended to add something to that general disposing power embraced in a fee simple.    The supposed devise over to her heirs, in case she made no devise, may be regarded as only declaring a conclusion of law, and not inconsistent with his intention, that the estate should go to her and her heirs.

The other source of argument is, that the testator manifestly intended, that Henry Codman, the husband of his daughter, should have only an estate for life in one moiety; whereas if the daughter should take a fee simple, her husband, if he survived her, would be tenant by the curtesy, and thus have a life estate in the other moiety.

We see no intention, on the part of the testator, that the son-in-law should never take any portion of the estate given to his daughter, through his daughter, and from her. Under the construction which we put on the will, he can only take a life estate in one half, under the will. But there are no exclusive words, — nothing to prevent him from acquiring a title to it, — after it became hers, either by her act, or by a provision of law. If she had a good power to devise in fee, she might devise to him. The intent was to give him no more than one half, to hold under the will in his own right. If the intent went beyond that, — if the testator intended, after the estate had become absolutely hers, to direct that it should not be governed by the common rules of law, — it was an intent, which the law could not carry into effect. If the testator had really intended, that his son-in-law, in the possible contingency of his surviving his wife, should not have that interest in her inheritable estate, which passes to him by operation of law, instead of an inheritable estate, he should have given him a life estate only, with devise over.

It is possible, that this will may have some operation, which the testator perhaps did not foresee or intend; but if this result follows from the proper construction of the will, it must be deemed to be within the legal intent. But if there were inferences and implications of the intent of the testator, much more manifest than any which we can perceive in this will, we think they could not control the decisive terms, in which the estate is given to the daughter in fee.